IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| ARNOLDO MENDOZA LEPEZ,<br><br>Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CIVIL ACTION NO. 5:18-CV-038-C-BQ<br>CRIMINAL NO. 5:17-CR-040-02-C |

## REPORT AND RECOMMENDATION

Movant Arnoldo Mendoza Lepez, a federal prisoner, brings this Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. ECF No. 8. The respondent is the United States of America (Government). On July 13, 2018, the United States District Judge referred the matter to the undersigned magistrate judge for the limited purpose of conducting an evidentiary hearing and filing findings of fact and conclusions of law regarding "Movant's sole claim that his trial counsel failed to file a notice of appeal as [Movant] instructed." *See* ECF No. 9. The district judge also authorized the magistrate judge to appoint counsel "only for the limited purposes of representing Movant at the evidentiary hearing and, if necessary, filing any objections to the Report and Recommendation." *Id.* at n.1.

### I.   Procedural History

On May 17, 2017, the United States of America indicted Lepez on multiple counts. The indictment also contained a forfeiture notice. On June 12, 2017, the court appointed defense counsel for Lepez,[1] and on June 13, Lepez's counsel filed a notice of appearance.[2]

---

[1] The court initially appointed Sarah Gunter as counsel for Lepez; however, Gunter filed, and the court granted, an unopposed motion to withdraw as counsel due to a potential conflict of interest.

[2] The court will refer to Lepez's appointed counsel as "defense counsel," "trial counsel," or "counsel" throughout.

1

Lepez subsequently entered into a plea agreement with the Government on July 10, 2017, in which he pleaded guilty to Possession with Intent to Distribute 500 Grams or more of Methamphetamine and Aiding and Abetting. On October 13, 2017, Senior United States District Judge Sam R. Cummings sentenced Lepez to serve a term of 405 months in prison, to run consecutively to any sentences imposed in pending state criminal cases in Washington and Oregon, and to run concurrently with any sentence imposed in a state criminal case pending in Lamb County, Texas. Lepez did not file a direct appeal; however, on January 31, 2018, Lepez filed the instant § 2255 motion. Through his motion, Lepez alleges, *inter alia*, that his trial counsel provided ineffective assistance by failing to file a notice of appeal. Specifically, Lepez contends that "[d]ue to the complexity of the case and the amount of time that [he] received, [he] immediately requested that his Counsel of Record file a timely Notice of Appeal . . . [to] appeal[] his sentence." Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, at 14[3] (ECF No. 8) [hereinafter Motion]. Lepez further asserts that he "made numerous attempts via telephone calls and letter(s) to Counsel as to the current status of his Direct Appeal," but "Counsel never accepted any of his phone calls or never responded to any of his letters." *Id.* Finally, Lepez alleges that his "family members also tried to contact Counsel and had no success in getting in contact with Counsel of Record." *Id.* On April 3, 2018, the Government filed its response in opposition to Lepez's motion. ECF No. 6. On April 27, 2018, Lepez filed a "Rebuttal/Traverse Motion to Government's Response." ECF No. 7.

With respect to Lepez's allegation that counsel failed to file a requested notice of appeal, the Government requested an evidentiary hearing. ECF No. 6, at 1. Accordingly, on July 13, 2018, the district judge referred this matter to the undersigned United States Magistrate Judge for

---

[3] Page citations to Lepez's pleadings refer to the electronic page number assigned by the court's electronic filing system.

2

the limited purpose of conducting an evidentiary hearing and filing findings of fact and conclusions of law in regard to Movant's claim. ECF No. 9.

In accordance with the order of reference, the magistrate judge appointed counsel for the limited purpose of representing Lepez on his claim that defense counsel failed to file a notice of appeal as instructed, and conducted an evidentiary hearing on October 4, 2018. ECF Nos. 10, 11, 18. Both parties were represented by counsel at the hearing. The following individuals testified at the October 4 hearing: (1) Lepez; (2) Lepez's trial counsel; (3) Gracia Fernandez Alcala, Lepez's sister-in-law; and (4) Ray Herrerra, an investigator with the Federal Public Defender's Office. Following the hearing, Lepez filed a "Motion to Supplement the Record with Newly Discovered Evidence." *See* ECF No. 22. On October 23, 2018, the court held a hearing on the motion, and allowed each party to make an "offer of proof" in the event the court decided to reopen the October 4 record to admit such evidence. *See* ECF Nos. 27, 28. By separate order, the court has granted that motion. Accordingly, the court considered all testimony and evidence submitted by the parties at both hearings.

Based upon the testimony and evidence presented at the hearings, a review of court records related to this matter, and the applicable law, the undersigned submits the following findings of fact and conclusions of law.

## II. <u>Findings of Fact</u>

1. Lepez's trial counsel has been licensed to practice law in Texas since 1977 and admitted to practice in the Northern District of Texas since 1979. In 1979, counsel became board certified in criminal law by the Texas Board of Legal Specialization, and he has accepted criminal appointments under the Criminal Justice Act for many years.

2. Defense counsel primarily practices criminal law, handling a mixture of state and federal criminal cases.

3. On May 17, 2017, the United States of America indicted Lepez on multiple counts. The indictment contained a forfeiture notice.

4. The United States Magistrate Judge appointed defense counsel on June 12, 2017, to represent Lepez regarding his criminal charges.

5. Prior to receiving discovery in the case trial counsel advised Lepez that he might receive a sentence of 235 months based on the pending charges. After reviewing the discovery, Lepez's counsel informed Lepez that he might receive a sentence in the range of approximately 262 to 327 months. Counsel did not, however, at any time promise Lepez would receive a certain sentence, and Lepez affirmed both in his written plea agreement and under oath at rearraignment his understanding that he could receive a sentence up to the statutory maximum, which was life imprisonment.

6. On July 10, 2017, Lepez pleaded guilty to Possession with Intent to Distribute 500 Grams or more of Methamphetamine and Aiding and Abetting. The plea agreement contained a provision waiving Lepez's right to appeal his conviction and sentence, except under limited circumstances, including: (1) a direct appeal of (a) a sentence exceeding the statutory maximum punishment, or (b) an arithmetic error at sentencing; (2) a challenge to the voluntariness of Lepez's plea of guilty or the waiver; and (3) a claim of ineffective assistance of counsel. His counsel reviewed the plea agreement with Lepez prior to Lepez signing it, and counsel testified that Lepez appeared to understand the waiver.

7. Trial counsel called the Terry County Jail (Jail) on September 12, 2017, and spoke with Lepez regarding the Pre-Sentence Report (PSR). During that call, counsel also generally

advised Lepez on the procedure for appealing, but Lepez did not communicate any interest in appealing.

8. Counsel met with Lepez on September 18, 2017, at the Jail to review and discuss the PSR.[4] The PSR contained a sentencing recommendation of 324 to 405 months,[5] which was higher than counsel had anticipated, due to a two-level importation enhancement. Lepez was aware of the information contained in the PSR—and the fact that the district judge might sentence him to 405 months imprisonment—prior to sentencing.

9. On October 13, 2017 (the morning of and prior to sentencing), counsel met with Lepez; however, their testimony concerning this meeting conflicts. Lepez testified that he asked his counsel to file a notice of appeal on his behalf, but counsel advised that Lepez must pay him a fee to file the appeal. Trial counsel, on the other hand, stated that Lepez did not ask him to file a notice of appeal during that meeting and that he does not charge clients to file a notice of appeal. Counsel further testified that had Lepez asked him to file an appeal during that meeting, he would have filed one because "all it is is a one-page piece of paper and you file it within fourteen days." Finally, counsel stated that he thought he reviewed the fourteen-day time limit for filing an appeal with Lepez during the meeting. The court credits trial counsel's testimony, and finds that Lepez did not clearly instruct him to file a notice of appeal prior to sentencing.[6]

---

[4] Lepez's testimony contradicts his counsel's in this regard: he stated that he did not recall counsel visiting him in Jail to discuss the PSR and the objections counsel would make to the PSR.

[5] Lepez testified that he believed the PSR contained a guideline range of 348–405 months. The parties did not introduce the PSR into evidence, and it does not appear on the docket in the criminal case. Regardless, both parties agree that the PSR recommended a sentencing range of no more than 405 months imprisonment.

[6] The court credits defense counsel's testimony in part because the facts alleged in Lepez's sworn Motion—that because of "the amount of time that Petitioner *received* [at sentencing], Petitioner *immediately* requested that his Counsel of Record file a timely Notice of Appeal in appealing his sentence" (Motion, at 14 (emphasis added))—contradict his testimony at the hearing, i.e., that Lepez directed his counsel to file an appeal *prior to sentencing*, but he did not do so afterwards. *See United States v. Brown*, 727 F.3d 329, 341 (5th Cir. 2013) (citing *United States v.*

10. Lepez, through his trial counsel, raised two objections to the PSR, including an objection to the two-level enhancement for drug importation. At sentencing, Senior United States District Judge Sam R. Cummings overruled those objections and sentenced Lepez to serve a term of 405 months in prison, to run consecutively to any sentences imposed in pending state criminal cases in Washington and Oregon, and to run concurrently with any sentence imposed in state criminal charges pending in Lamb County, Texas. The district judge also imposed a five-year term of supervised release.

11. At sentencing, the district judge orally advised Lepez that he had a right to appeal and that if he wished to appeal his sentence, he must file a notice of appeal within fourteen days.

12. Neither Lepez nor his counsel testified that Lepez exhibited any unhappiness immediately after sentencing. Lepez did state that trial counsel mentioned that he would come see Lepez in Jail; Lepez's counsel did not explicitly refute that contention. Both Lepez and his defense counsel testified Lepez did not instruct counsel to file an appeal after sentencing.

13. On October 17, 2017—four days after sentencing—Lepez made two phone calls from the Jail[7]: one to defense counsel's office, during regular business hours (*see* Def.'s Ex. 1); and one to counsel's cell phone immediately following the office call. *See* Def.'s Ex. 2. Both calls were refused.[8] Defense counsel testified as follows regarding the office call:

---

*Sotelo*, 97 F.3d 782, 799 (5th Cir. 1996)) (noting that a fact-finder is "well positioned to evaluate . . . credibility and [is] entitled to reject [witness] testimony as self-serving and inconsistent with the balance of the evidence presented").

[7] Lepez testified that he called defense counsel's office three or four times and counsel's cell phone two times. The Jail records, however, reflect that Lepez placed only two calls—one to counsel's office phone and one to counsel's cell phone. Lepez further attested in his Motion that he wrote "letters" to defense counsel. At the hearing, however, Lepez conceded that he attempted to send only one letter, but he was not sure if the letter was actually mailed.

[8] Defense counsel explained that, with respect to Lepez's call to his office, his office staff refused the call pursuant to an office practice that staff not accept jail calls when counsel is not available to answer the phone.

Q. [by Lepez's habeas counsel] And in those [jail] calls, when the recording comes through, it's first it's a recording and then the guy says his name and then it's the rest of the recording. That call would have identified the caller?

A. You know, different jails have different deals. Sometimes it's Arnold or whatever, but I . . . yes, we would have recognized. I think at that time he was the only person we had at the Terry County Jail, so it would've been obvious to all the people in the office that if I was in that call should have been accepted.

Q. Alright, and [pause] and up until this morning, were you aware that call had even been made?

A. No.[9]

Q. Alright, fourteen days following sentencing that's pretty important, isn't it?

A. It is.

Q. For someday that got 405 months it's it's very important?

A. Yes.

Q. Alright. The responsibility for being there and and getting that call to you rests with you. You're responsible for the performance of your staff. Right?

A. Yes.

Q. Alright. Within that time period, giving that call, given the context of this case, do you think it would've been a fair conclusion what that call was about?

A. Sure.

Q. That the request for an appeal?

A. Sure.

Based on his testimony, the court finds that defense counsel had no direct knowledge of Lepez's two phone calls until the day of the evidentiary hearing.

---

[9] This testimony is corroborated by Government's Exhibits 1 and 2. With respect to Lepez's call to defense counsel's cell phone, counsel testified at the October 23, 2018, hearing that he was on vacation at the time of Lepez's call, and he was likewise unaware of that call. *See* Government's Ex. 3.

14. Lepez also contends that he asked his sister-in-law, Gracia Fernandez Alcala, to contact trial counsel regarding an appeal. Fernandez testified as follows: she does not speak English, but Lepez's sister, Blanca Lepez, does. Approximately five to six days after Lepez was sentenced, Fernandez (at Lepez's instruction) asked Blanca Lepez to call defense counsel's office regarding filing a notice of appeal. Fernandez is not certain what Blanca Lepez discussed, or with whom, but she believes Blanca spoke with counsel's secretary and requested that he return her call regarding filing an appeal in Lepez's criminal case. Defense counsel testified, however, that he has no record, as reflected by Government's Exhibit 2, of Lepez's family calling his office regarding Lepez's sentencing.[10] Although Lepez presented evidence demonstrating that he called counsel's office from Jail (Defendant's Exhibits 1 and 2), he did not offer documentation showing that he called Fernandez from Jail, or that his sister called defense counsel's office. Based on Fernandez's admitted inability to comprehend English and the lack of corroboration by phone records, the court finds that Fernandez's testimony in this regard is not persuasive, and that Blanca Lepez did not instruct defense counsel to file a notice of appeal on Lepez's behalf.

15. Trial counsel did not communicate with Lepez or visit Lepez in jail after sentencing.

16. At no time either prior to or within fourteen days after sentencing did Lepez instruct defense counsel to file a notice of appeal on his behalf. Defense counsel testified that Lepez never conveyed any interest in appealing. Lepez did not present any evidence showing that he demonstrated—through his body language or verbal statements—an interest in appealing to his counsel after sentencing.

---

[10] Defense counsel also stated he had a good relationship with Lepez's wife and spoke with her several times prior to sentencing, but that he never received any communication from her post-sentencing.

17. Lepez never filed a notice of appeal.

### III. Conclusions of Law

The Sixth Amendment guarantees criminal defendants the right to "reasonably effective" legal assistance, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish a claim for ineffective assistance of counsel, a movant must satisfy the "now-familiar" *Strickland* test and demonstrate that: (1) his attorney's representation "fell below an objective standard of reasonableness"; and (2) he was prejudiced by his counsel's deficient performance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (quoting *Strickland*, 466 U.S. at 687–88). A movant's failure to satisfy either prong of the *Strickland* test is generally fatal to his claim. *Strickland*, 466 U.S. at 700; *see United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014).

### A. Lepez did not instruct his defense counsel to file a notice of appeal.

The *Strickland* test applies to Lepez's claim "that counsel was constitutionally ineffective for failing to file a notice of appeal." *Flores-Ortega*, 528 U.S. at 477. An attorney's failure to file a requested notice of appeal "is *per se* ineffective assistance of counsel, with or without a showing that the appeal would have merit." *United States v. Tapp*, 491 F.3d 263, 265–66 (5th Cir. 2007) (citing *Flores-Ortega*, 528 U.S. at 483–86) (noting that the *Flores-Ortega* standard applies "even where a defendant has waived his right to direct appeal and collateral review"). Thus, if a movant establishes by a preponderance of the evidence that he asked his attorney to file a notice of appeal, and his attorney did not, prejudice is presumed. *Id.* at 266. An attorney's "duty to perfect an appeal on behalf of a convicted client," however, "does not arise on conviction . . . ." *Childs v. Collins*, 995 F.2d 67, 69 (5th Cir. 1993). Instead, the client must *clearly communicate* to his attorney, in a timely manner, that he wants to appeal. *See id.* (affirming denial of movant's ineffective assistance of counsel claim where movant failed to communicate to counsel his desire

to appeal his criminal conviction); *see also United States v. Rivas*, 450 F. App'x 420, 424 (5th Cir. 2011) (citing *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999)) (explaining that the Fifth Circuit has "avoided a bright line rule requiring criminal defense counsel to perfect an appeal in every criminal conviction").

Here, the undersigned finds for multiple reasons that Lepez has failed to demonstrate by a preponderance of the evidence he instructed defense counsel to file an appeal. In his Motion, signed under penalty of perjury, Lepez alleges that due to the amount of time he received he "*immediately* requested that his Counsel of Record file a timely Notice of Appeal" concerning his sentence. Motion, at 14 (emphasis added). Conversely, Lepez testified under oath at the § 2255 hearing that he asked counsel *prior to sentencing* to file an appeal but did not do so *after* sentencing, merely alleging that trial counsel indicated he would visit him in jail.

The court further credits the testimony of Lepez's trial counsel who, as an officer of the court, testified that Lepez did not instruct him to appeal at any time prior to sentencing, and that Lepez did not ask counsel post-sentencing, either in person or through phone calls or a message from Lepez's family, to file an appeal. *See Brown*, 727 F.3d at 341; *see also Baumgartner v. United States*, No. 2:09-CV-015, 2011 WL 3652335, at *5 (N.D. Tex. Aug. 3, 2011) (weighing attorney's testimony over that of defendant in part because attorney is an officer of the court and defendant "has much more to gain or lose by the outcome of [his] § 2255 motion). Lepez's evidence concerning his communications to defense counsel regarding a possible appeal is contradictory, and the corroborated evidence merely shows that, at best, Lepez *attempted* to contact counsel via telephone to discuss an appeal.

In sum, the undersigned finds that Lepez has failed to demonstrate by a preponderance of the evidence that he clearly asked defense counsel to appeal his criminal sentence. Accordingly, the district court should not grant Lepez relief on this basis.

B.  **Lepez has demonstrated that defense counsel did not fully satisfy his duty to consult regarding an appeal, and that Lepez was thereby prejudiced.[11]**

Where a movant does not specifically direct his attorney to file an appeal, as in this case, the court may still have an obligation to determine whether his attorney failed to adequately consult with him regarding an appeal. *See, e.g., Flores-Ortega*, 528 U.S. at 478 ("In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal."); *Lopez-Lara v. United States*, Civil Action No. B-13-178, 2014 WL 11531891, at *11 (S.D. Tex. Aug. 7, 2014) (explaining that the court was required to determine whether movant's attorney had a duty to consult regarding an appeal, despite movant's failure to ask his attorney to file an appeal). "In this context, 'consult' means that counsel tendered advice about the advantages and disadvantages of appealing and made a 'reasonable

---

[11] Lepez did not explicitly raise this claim in his pro se § 2255 Motion, nor did his habeas counsel seek leave to amend the Motion to assert this ground. At the evidentiary hearing, however, Lepez's habeas counsel argued that defense counsel breached his duty to consult with Lepez regarding a direct appeal, and subsequently submitted findings of facts and conclusions of law in support. The district judge's order of reference limits the undersigned's review to Lepez's claim that trial counsel failed to file a notice of appeal as instructed. To the extent, however, the district judge's referral and existing law require examination of this question, i.e., that Lepez properly raised the issue and *Flores-Ortega* requires a court to address whether counsel adequately consulted with a defendant about the right to appeal, even where the defendant did not clearly communicate such a desire, the undersigned submits the following additional findings and recommendation. *See Hurrelbrink v. United States*, Case No. 3:15-CV-3978-L-BK, 2017 WL 1683663, at *2 & n.2 (analyzing "Petitioner's contention, raised for the first time at the evidentiary hearing, that counsel breached the constitutionally-imposed duty to consult with her about an appeal," because *Flores-Ortega* requires as much). In this regard, the court notes any claim that defense counsel provided ineffective assistance of counsel by failing to consult with Lepez about an appeal relates back to Lepez's initial claim that he failed to file a requested notice of appeal. *See United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005)) (holding that a "new claim" for ineffective assistance of counsel relates back to a prior ineffective assistance claim if it is "supported by facts that [do not] differ in both time and type from those the original pleading set forth").

effort to discover' the defendant's wishes on the issue." *United States v. Calderon*, 665 F. App'x 356, 364 (5th Cir. 2016). "[T]here is no mechanical rule that consultation must always follow sentencing, but counsel's cursory discussion *before* sentencing [does] not compensate for the complete failure to mention the possibility of appeal after sentencing." *Esquivel v. United States*, No. 3:15-cv-553-D-BN, 2016 WL 6902150, at *5 (N.D. Tex. Oct. 3, 2016) (quoting *United States v. Pham*, 722 F.3d 320, 324 n.16 (5th Cir. 2013)) (emphasis in original) (internal quotation marks omitted). Additionally, the Supreme Court has noted that "district courts would find a duty to consult 'in the vast majority of cases.'" *Pham*, 722 F.3d at 324.

The first *Strickland* prong, known as the "performance" prong, "begins with the question whether counsel 'consulted' with the defendant regarding an appeal." *Id.* at 323 (quoting *Flores-Ortega*, 528 U.S. at 478). Where an attorney fails to consult with a client regarding an appeal, "then the question is whether that failure was unreasonable because it breached the duty to consult." *Id.* at 324; *see also Flores-Ortega*, 528 U.S. at 478 (explaining that even where an attorney "has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance"). An attorney "has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 480). The court must assess an attorney's duty to consult "in light of 'all the information counsel knew or should have known.'" *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480). "Whether the conviction followed a trial or a guilty plea is 'highly relevant,' although not determinative, as is whether the defendant waived his right to appeal and

whether he received a sentence for which he bargained." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480).

When an attorney breaches his constitutionally-imposed duty to consult, the court will not presume prejudice. *Hurrelbrink*, 2017 WL 1683663, at *2 (citing *Flores-Ortega*, 528 U.S. at 484); *Esquivel*, 2016 WL 6902150, at *4. Instead, "under *Flores-Ortega*, a defendant satisfies the second *Strickland* prong [the "prejudice" prong] if he shows 'that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.'" *Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 484). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," which requires a "substantial," not just "conceivable" likelihood of a different result. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694). "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Flores-Ortega*, 528 U.S. at 485. To establish prejudice, however, a defendant need not "demonstrate that his hypothetical appeal might have had merit . . . ." *Id.* at 486. The Fifth Circuit has held that "*Flores-Ortega* applies 'even where a defendant has waived his right to direct appeal and collateral review.'" *Bejarano*, 751 F.3d 285 (quoting *Tapp*, 491 F.3d at 266).

### 1. *Lepez reasonably demonstrated to defense counsel that he wanted to appeal.*

The evidence is unclear as to the precise extent defense counsel consulted with Lepez regarding any appeal. At the evidentiary hearing, defense counsel generally stated that he reviewed the terms of the plea agreement with Lepez, which contained a waiver-of-appeal provision, prior to his guilty plea on July 10, 2017.[12] Counsel also testified that he called the Jail on September

---

[12] Defense counsel initially advised Lepez he might receive a sentence of 235 months based on the pending charges. After receiving discovery, and at the time of the guilty plea, counsel had upped the estimated sentence range to 262 to

12, 2017, to discuss the PSR with Lepez and generally advised him on the procedure for appealing. On October 13 (the morning of sentencing), defense counsel believed he discussed with Lepez the fourteen-day time limit for appealing, although he could not be certain. Defense counsel further testified that he did not meet with or speak to Lepez after sentencing. Based on this evidence, the undersigned cannot conclude that trial counsel meaningfully "consulted" with Lepez regarding a possible appeal, particularly *after* sentencing, where the court imposed a term of imprisonment some 78 to 170 months (roughly six to fourteen years) higher than counsel's initial read and subsequent revised opinion following discovery production and upon entry of the guilty plea. *See Esquivel*, 2016 WL 6902150, at *5 (citing *Pham* for proposition that cursory discussions prior to sentencing do not compensate for failure to discuss possibility of appeal after sentencing).

The court must therefore determine whether defense counsel had a constitutionally imposed duty to consult with Lepez regarding an appeal, and examine whether (1) Lepez reasonably demonstrated to counsel that he was interested in appealing, or (2) a rational defendant would want to appeal. *Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 480). The court must assess this duty "in light of 'all the information counsel knew or should have known.'" *Id.*

Initially, the undersigned notes Lepez offered little in the way of evidence suggesting his immediate post-sentencing actions should have triggered trial counsel's duty to investigate Lepez's desire to appeal. Specifically, Lepez did not allege that he was visibly dissatisfied, or that he voiced complaint to counsel, post-sentencing. *See, e.g., United States v. Casarez*, 304 F. App'x 325, 325 (5th Cir. 2008) (per curiam) (explaining that movant failed to reasonably demonstrate to counsel he was interested in appealing where, although movant "was upset about sentencing

---

327 months. Upon receiving the PSR after the plea, both defense counsel and Lepez learned the guideline range was 324 to 405 months, based primarily on a two-level enhancement for drug importation.

matters before and after the sentencing hearing, [movant] did not express to counsel any interest in appealing the sentence either when [movant] spoke to counsel after the sentencing hearing or when [movant] called counsel's office"); *Hurrelbrink*, 2017 WL 1683663, at *4–5 (distinguishing *Pham* and explaining that movant failed to establish the first *Strickland* prong where movant, despite being dissatisfied with her sentence, did not indicate a desire to take any action to appeal); *United States v. Washington*, Criminal Action No. 11-235, 2014 WL 5179601, at *7 (E.D. La. Oct. 14, 2014) (holding that attorney's failure to consult with movant regarding an appeal did not breach a constitutional duty where movant presented no credible evidence establishing that he conveyed to his attorney an interest in appealing).

Despite the paucity of evidence concerning Lepez's immediate response to the sentence, the undersigned believes trial counsel's testimony at the § 2255 hearing requires a finding in Lepez's favor on this issue. The undersigned has previously found Lepez made no statement to defense counsel at or following sentencing indicating that Lepez wanted counsel to file an appeal. Neither party disputes, however, that trial counsel's office received a phone call from Lepez four days after sentencing, and for what counsel admitted at the § 2255 hearing was most likely a call regarding an appeal. Trial counsel admitted that his office staff would have known the phone call they received, within the fourteen day period for filing an appeal, would have in fact been from Lepez as the recording identified the Jail as the source of the call and Lepez was the only client they had there at the time.[13] Counsel further expressed his opinion that, given the timing of the call, Lepez was likely calling regarding an appeal. While the evidence shows trial counsel was unaware of Lepez's call prior to the date of the § 2255 hearing, the undersigned finds that fair application of the Sixth Amendment cannot excuse a failure to consult simply because an

---

[13] Defense counsel's office staff refused the call pursuant to an office policy that they not accept calls when counsel is unavailable to take the call.

attorney's office staff did not inform him of a call received from his client, particularly where counsel acknowledged the call in all likelihood involved filing an appeal. To be clear, the undersigned does not find that in most cases an attorney would be charged with notice of a client's intent based simply on the existence of an unanswered phone call. *See, e.g., Ellis v. Mullin*, 56 F. App'x 858, 864 (10th Cir. 2003); *United States v. Kitchens*, No. 98-41547, 2000 WL 329352, at *1 (5th Cir. Mar. 23, 2000) (unpub. opinion)). However, where, as here, trial counsel admits that his office knew the call came from his client and that counsel believed the client was likely calling regarding an appeal, given the proximity of the call following sentencing, the court finds that Lepez has demonstrated, by a preponderance of the evidence, that he conveyed an interest in "chang[ing] the outcome of his sentencing through additional proceedings" sufficient to trigger defense counsel's constitutional duty to consult about an appeal. *See Pham*, 722 F.3d at 324, 326 (stating court must assess duty in light of all information counsel knew or should have known). Because Lepez reasonably demonstrated an interest in appealing, the district judge should find that Lepez has proven the performance prong of *Strickland*.

### 2. *Lepez has also satisfied the "prejudice" prong of the* **Strickland** *test.*

Because Lepez has established the first *Strickland* prong, the court must now analyze the second *Strickland* prong—whether there is a reasonable probability he would have appealed, regardless of whether his appeal had merit. *See Bejarano*, 751 F.3d at 286. In *Flores-Ortega*, the Supreme Court recognized that in many cases, "the performance and prejudice prongs may overlap, [but] they are not in all cases coextensive." 528 U.S. at 486. Thus, "although showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed," a defendant may also "satisfy the prejudice requirement when there are other substantial reasons to believe that he would have appealed." *Id.*

Lepez relies on the following facts to establish prejudice: (1) the PSR guideline sentencing range and the sentence he actually received were both higher than originally anticipated due to a sentencing enhancement for importation (the objection to which was overruled at sentencing); (2) the two phone calls Lepez attempted to make to defense counsel four days after sentencing; and (3) his statement that he would have appealed but for counsel's allegedly deficient performance. These facts suggest a reasonable probability that Lepez would have appealed. Reinforcing this conclusion is trial counsel's testimony that given the timing of Lepez's attempted phone calls to his office and cell phone, Lepez was likely inquiring about an appeal. Moreover, Lepez filed his pro se § 2255 Motion—which identifies as error, *inter alia*, a two-level sentencing enhancement for drug importation, a factor first identified in the PSR and that served as the basis for increasing his maximum guideline range from 327 months to 405 months—approximately three months after sentencing, when he learned from his family that a direct appeal had not been filed. Motion, at 14. Lepez's filing of the Motion shortly after sentencing, in conjunction with the attempted phone calls, higher than expected sentence due to an enhancement, and testimony that he would have appealed, is sufficient to undermine confidence in a conclusion that, had defense counsel sufficiently consulted with Lepez, an appeal would not have been filed. *Bejarano*, 751 F.3d at 286–87; *see Flores-Ortega*, 528 U.S. at 486; *Esquivel*, 2016 WL 6902150, at *8 (finding petitioner demonstrated prejudice where he testified he would have directed counsel to appeal the drug weight amounts if counsel had consulted with him, and petitioner filed a pro se motion to reduce his sentence three months post-sentencing); *Garcia v. United States*, 2:13–CV–0019, 2015 WL 9872538, at *3 (N.D. Tex. Dec. 30, 2015) (finding that where an attorney does not complete a consultation by making a reasonable effort to determine whether the defendant wants to appeal, and the defendant demonstrates prejudice, the defendant is entitled to an out-of-time appeal).

Accordingly, the court finds that Lepez has, by a preponderance of the evidence, demonstrated that there is a reasonable probability he would have appealed but for defense counsel's failure to consult. The district court should therefore conclude that Lepez has proven the prejudice prong of *Strickland*.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court should find that defense counsel's performance did not fully satisfy the requirements of the Sixth Amendment as outlined by the Supreme Court in *Flores-Ortega* and applied in this circuit by *Pham*, and grant Lepez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody to allow Lepez to file an out-of-time appeal.[14] The undersigned further recommends that the district court reinstate the judgment in criminal case number 5:17-CR-040-C-2.

## V. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge

---

[14] Lepez's reply (ECF No. 7) was docketed as a motion. The undersigned recommends that the motion be terminated.

that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: January **9**, 2019

                                                **D. GORDON BRYANT, JR.**
                                                **UNITED STATES MAGISTRATE JUDGE**